Case number 161186, Vladeck-Filler v. Mary Kellet et al. Good morning. May it please the court. I'm John Whitman. I represent the defendant appellant, Mary Kellet. This case, as you know, is a 1983 action against a number of prosecutors and police officers in Maine. The underlying prosecution was for spousal rape, and it ended up with a first trial in which the plaintiff was found guilty, but then a second trial was granted in which he essentially exonerated himself. Before you go on, is part of the case, like the defamation claims, is that still alive in the district court? Yes. In other words, we're here on very limited interlocutory appeal. So the only issues before this court have to do with absolute immunity, which is the only reason we're allowed to appeal at this time, as you know. Just so that I'm clear, absolute immunity as to what portion of the case? There are two points in question today. The first is absolute immunity of a prosecutor for what the plaintiff would describe as giving legal advice to police. The key case there is Burns v. Reed. The second point is an allegation of what the plaintiff would describe as evidence tampering, and I have some points to make with respect to each. I'd like to start with the first one. Before you do that, can I just understand something about what's on appeal, which I thought I understood, but now I'm worried I don't. Is the substantive issue of whether a most prosecution claim can be brought as a Fourth Amendment claim before the court on appeal? I think it is. It's been raised and alluded to. How can't we have interlocutory? You said you couldn't appeal that. The only thing you can appeal is absolute immunity. I think that's true. And so whether a claim was stated under Iqbal and Twombly on this Fourth Amendment notion is not before us because there is no interlocutory appeal over that matter. That's correct. So we just assume then that there is a viable Fourth Amendment claim. Yes, as this court has done before on at least one occasion under similar circumstances. And I was just trying to see with respect to that claim, would you have absolute immunity for these actions? Correct. Which case was it where we did that? I think Moreno-Medina in 2012 was the most recent. Okay. As you know, there's a case before the U.S. Supreme Court on this right now, which made, I believe... Actually, no. I don't know. What is it? Manuel v. Joliet. But it's extraneous to the appeal. I don't wish to take up your time with that. The first issue has to do with whether Kellett, during the criminal discovery process, withheld exculpatory materials, both herself, but this is the key point for the appeal, by telling law enforcement officers who were in possession of those materials to ignore the subpoena of defense counsel. And that's the first issue. And then there's a separate issue of tampering with the evidence by omitting a portion of the videotape, which was eventually turned over to defense counsel. That's correct. All right. On the first point, the complaint is very lengthy, but to summarize the part about the withholding of exculpatory evidence, Kellett was said to have ignored the requests from defense counsel when she provided materials. They were too little, too late. She withheld some and didn't provide all of them. She said she didn't have certain materials. She told defense counsel to go to the police, various law enforcement agencies, which would be the ones who actually held video and audio and photo evidence and obtain them directly. At one point, a motion to compel was granted by the judge, which she did not comply with, and eventually defense counsel subpoenaed some of these materials. The timeline is important. The indictment was in August of 2007. The first instance of the so-called giving legal advice to a police officer was to Officer Wilmot in May of 2008. The first trial, which resulted in a conviction, was in January of 2009. And the other two instances of Kellett telling a law enforcement officer, Willie and Malloy, not to honor a subpoena, were both in June of 2009 after the first trial and heading toward a second trial, the first one being overturned. And the point, I'm going to make it with two points, and I'll try to do this very quickly. First of all, in there it says that we are using a functional analysis. Before you, just so I get the timeline right, you said before heading to the second trial, she gave some of this advice? Yes. And so heading to that second trial, before that second trial, was the defendant held with restraint depending on that second trial? No. There were allegations that he was held with restraint with respect to the first trial. I believe so. And he was released after the first trial? Yes. Okay. Wasn't he, excuse me, wasn't he released on bail before the first trial? He was, with restrictions though. With restrictions. No, let's pursue this point. Once he was released on bail, what were the restrictions? I understood the arrest came with certain restrictions. There were restrictions that had to do, and here my memory is poor, but there were restrictions that had some substance to them. Stay away from his wife's contact with the child. Exactly. And his house was leaned during that period, was it not? Right. What period? The period after he was released, I think. As part of the bail conditions, I had understood that he had released all claims of Fourth Amendment claims of unreasonable arrest, confinement. Was that part of the bail conditions? Yes, I recall it was. Is that in the record in the case? I'm not here to argue that point today is all I can tell you, nor today am I arguing that he was not subject to a seizure. The point I am arguing is on absolute immunity, and with regard to the so-called advice to the police officers, I would say that a functional approach, as indicated by the court in Ambler, would show that what we're talking about here really is Before you do, I know we keep saying before you do this, but it's because the case is coming to us in a posture that's not evident to me exactly what we need to decide and what we don't. Some of these propositions are broader than may be ones we need to expound upon. That's why I'm trying to figure out exactly what we're talking about. In that regard, if you're conceding that there was a seizure, and you're not challenging on appeal, then a versus prosecution claim can be brought for a seizure. I would have thought that the absolute immunity issue is relevant only insofar as some of these actions could plausibly be connected to causing a seizure. In other words, if some action is an action that, in principle, it's debatable whether you could have absolute immunity for, but in this particular case, that action couldn't plausibly have caused the seizure, then that action can't be a source of liability. That's a good point, Your Honor. It's not a point that I see you making. I just want to be brief. So what we're left with is, in the abstract, we're supposed to decide an absolute immunity issue as if the action could have been relevant to the seizure, when we have no basis for thinking it would be. And I don't quite understand why it makes sense for us to expound upon, in general, what actions are, are not the kind of thing that can be causing absolute immunity. But in this case, it may have no relevance at all. The district court, you know, just decided it or brought the immunity that he needed to do it. But I don't really see how, I mean, this is to your benefit, I think, but I don't really see how some of these actions, given when you're saying they occurred, could plausibly have been the source of the seizure. The earlier action, the pre-investigative action, with respect to the video, I can understand how that potentially could lead to a seizure. But these other ones, whether we say, in some hypothetical case, maybe advising on this would or wouldn't lead to a violation, I don't see how it led to the earlier seizure. I will go almost directly to the second point, then, about the so-called tampering of the evidence. But before I leave the first point, I think there is one thing I would like, one point I would like to make. All of the withholding of exculpatory evidence, whether it was by her, because she had materials, or whether because she was telling a law enforcement officer, don't honor the subpoena, all of that obviously took place after the indictment in August of 2007. It was during the judicial phase by any reckoning of the superior court cases. And you consider that that is true with respect to the divorce hearing as well, where the records were subpoenaed for that hearing? The divorce hearing was in 2009. I understand that. Yes. But isn't that, again, something that we have to take a look at? Because aren't you asking for absolute immunity as to that action as well? Yes. Yes, we are. Because it was during the period when he was going to be bound to a new trial, which had not occurred yet. That's correct. And so the prosecution continued through that time period. That's absolutely correct. But that's true of the press conference in Buckley. During the prosecution, when they're giving the press conference, but they say in that role, you're not an advocate for the court. And here, you're advising them on how to participate in the divorce proceeding. It may be that if you did a ton of discovery, you could prove out that actually it was all aimed, but in principle, to say that you can be advising in a parallel proceeding, which is a civil proceeding, which has different legal rules, et cetera. She has different advice she may be bound as a lawyer to give. That in principle, because it's during the same time as the prosecution, she must be absolutely immune from that. But I don't understand why we have to reach that issue if her advice in that context couldn't plausibly have affected the seizure, which had occurred earlier. I understand your point, and I thank you for raising it. But nevertheless, I think the other point is simply that the citation of Burns v. Reed for giving legal advice to the police does not draw absolute immunity. It's a misreading of Burns. It's a serious misreading. Okay, we understand that. Can we get to the videotape? Because there is an allegation in the complaint, not well supported, but there is an allegation that she had engaged in that on or about the time of his arrest. That is an effort by the 1983 plaintiff in this case to tie her tinkering with the evidence to the arrest. Okay? And the only issue for us on appeal is the qualified immunity issue because no other issue can be raised before us, such as the adequacy of that pleading. Don't we have to take that at its face value for Fourth Amendment purposes? Here today, you do. Yes, I agree with that. The allegation is vague. It says from the time of his arrest, which happens to have been April 26th, up to the indictment at some point in that period, the indictment being August 8th of 2007, at some point tampering occurred. Okay, how could that causally have caused his arrest? The timing is very close. The arrest was on April 26th. I'm making a case against myself here, but the actual interview was the day before, April 25th. I guess in theory, the tapes could have been rushed to the prosecutor and she could have redacted the exculpatory material all within hours before the arrest. And then cause that to go to the arresting officers? It's not very likely, but you've asked me to be candid. I guess it's theoretically possible. I think, though, there are a couple of points here that are worth making. One of these is that even assuming there was tampering before the indictment, the tampering is a harsh way of describing it, or an imprecise. It was a redaction. The circulation that was not recorded was taken down because it was exculpatory. That was clearly exculpatory evidence, and it is removed. That's my definition of tampering. Well, let me be more precise. The evidence was not destroyed. It was taken out and withheld. I grant you that, and it was exculpatory, no question. The point is that technically there's no violation of any kind vis-à-vis the defendant in the case until that material is withheld from him and discovered. That's not right if there's a Fourth Amendment violation because the violation is proceeding to seize him without probable cause. And the question is, if the plaintiff is to be believed, their complaint, did the investigative actions of the prosecutor contribute to the seizure without probable cause? If so, the fact that later the prosecutor capitalized on that tampering to also withhold evidence, you're right that they would have absolute immunity from that subsequent withholding. But in the earlier phase, if as an investigator they were dealing with the evidence, and as an investigator, just like if a police officer did it, I thought it probably suggests you don't get absolute immunity for that. I understand your point, and I think that the question as to whether any of this could have happened in the time between the interview on the 25th of April and the arrest the next day is whether in fact the redaction was done in there. I think it's... But that's the allegation of the complaint. That it was done at some point in a period of time. In that period. Yeah, Judge Stahl is focusing you on one paragraph of the complaint. I understand. There are later allegations that before the tape gets turned over, she causes this excision. But the problem from your point of view is that they tie it in the same time period. They make that allegation. You were asked to specifically address one of our precedents. Didn't you all get an order on Friday telling you we want you to address... Cuevas, I think it was. I don't recall seeing it. What precedent was it? You received the order. The order went out. I don't have the order handy with me. The case is... Parties are advised they should be prepared to discuss an oral argument on November 7th Do you know how Hernandez-Cuevas v. Taylor, 723 F. 3rd 91, 1st Circuit, 2013, bears on whether a Fourth Amendment malicious prosecution claim may be brought in this case? Did you not... Did you check out the electronic... I think we've touched on this already. Do you know the case? I've read it, yes. Why wasn't it briefed to us? I don't know. Do you have anything you'd like to say about it? I think what's already been said is sufficient. We're not here arguing that point, the point that this court has assumed on several occasions already. We did more than assume in this case. We said there is a cause of action. We carefully limited what it was. And so the point of asking you about this was how did the facts of this case line up with those limitations? Well, there was a seizure. There's no question about that. And we don't deny that. In other words, we're not arguing that point on appeal. Okay. Thank you. I apologize to the court for failing to react to that order. Good morning. May it please the court and counsel, my name is Jamesa Drake. I'm here as counsel of record for AMICI, the American Civil Liberties Union, and the American Civil Liberties Union of Maine, the Maine Association of Criminal Defense Lawyers. And I'm here today in support of Mr. Filler's position. There is a lot that has been taken off the table as a result of the argument that this court just heard. And as it relates to the Cuervas case, I understand, my brother, to say that we are not arguing whether the elements of a Fourth Amendment malicious prosecution claim have been met, that that issue is not before this court. I understand that he's unwilling to argue. I think that may be a bit broader than what he actually said. In any event, let's take it that he concedes that there was a seizure which was pled. Yes. I think he's also, despite this court's repeated invitation, seems unwilling to argue that there was no connection between the misconduct alleged in the complaint and some Fourth Amendment deprivation. I think he has removed that issue from this court's consideration. It's not something I think that can be removed. I don't quite understand. What are we then deciding? In principle, can there be absolute immunity for the use of it? Or in general, or now there can be absolute? Why would we decide it that way? I don't understand how that's a reasonable thing for a court to be evaluating if we know that the absolute immunity is with respect to a claim, and the claim is the Fourth Amendment claim. So isn't there some burden on you to explain how the issue in the case for which you're saying they're not immune is a relevant issue to the claim? I mean, there's many things this prosecutor has done in her life for which she does not have absolute immunity, which would be utterly irrelevant for us to figure out. That's correct, and I'm happy to engage on the merits of this question. I will make a procedural point, however, that it is not our burden. It's the burden of the party that's asserting absolute immunity to prove it, and as the appellant, it's the burden to place that issue before the court, and in neither instance has that been done. That being said, if we look at the elements of a Fourth Amendment malicious prosecution claim, they are satisfied in this case. The causation element has been interpreted by courts to include not only the initiation, but of course the continuation of the deprivation. Without the continuation, it would be difficult. When did the deprivation end? The deprivation in this case ended when he was finally removed from bail conditions, which happened at the conclusion of his second trial after he spent... I'm sorry, I thought we were told it was at the end of the first trial. At the end of his first trial, he was convicted of gross sexual assault, which is a Class A felony. In Maine, it's the highest possible crime. At the time, he was awarded post-conviction bail and put on bail conditions. During the pendency of... And were those different conditions than the first ones? I mean, do we have an intervening event here? His conviction? That's correct. That is certainly correct. All right, so your case starts with his arrest under bail conditions, which held until he was convicted in the first trial. Is that correct? That's correct. And how did they change? This is not well developed in the complaint, but he remained under conditions that were depriving his liberty after his conviction. So how can that be arrest after conviction? This is what I say. Well, of course, the conviction... Oh, you would have it continue throughout the entire prosecution, regardless of whether there was a conviction. Not me. This is the way courts... This is the way the restatement second interprets the tort. What's your best case for your very broad continuation? I would refer this court to Pierce v. Gilchrist, which was cited favorably in the Kravitz opinion. It's out of the Tenth Circuit. The site is 359 F. 3rd, 1279. That case, and many like it, including cases in district court in this circuit, say that the causation element includes not only the initiation, and that's not strictly interpreted to simply mean the arrest or the charging decision, although, of course, in this case, Ms. Kellett was involved in the charging decision, but it can encompass activities on the part of forensic chemists. I'm sorry. Can we go back? Of course she was involved in the charging decision you just said. There was the arrest, and then there was the bail hearing, and there was a later indictment. Was she involved in the arrest? I can't say for certain whether she was at the scene when the arrest took place. That isn't my question. Was she involved as a prosecutor in the arrest? I think that fact is undeveloped in the complaint. She was involved in the bail. She did make the bail argument. So she was certainly, to some degree, ratifying the decision that he had been arrested. Can I just understand the continuation theory for a moment? Because I understand that the continuation theory works only if there was some initial action which got the train running, in other words, a subsequent action that didn't divulge information, that if it had been divulged might have ended the whole prosecution. You're saying that can separately affect the seizure, even if the seizure was affected with a probable cause to begin with? No. No, right. So even if you say continuation, the only thing that matters, you have to show some initial activity by the prosecutor that led to the seizure. If you can't show that, you can't. Is that right? I would say that generally speaking, that's right, except, of course, procedurally that appears not to be the case. I understand that. But secondly, yes, we can. So the best fact for that is some pre-indictment activity by the prosecutor, which is the doctrine of the video.  And that happens to dovetail nicely, I would have thought, with your argument that there's no absolute unity, since, by definition, that's in the investigatory phase. That's certainly one way to look at it. However, we still have her, that takes care of one of the three subpoenas. We have three subpoenas in this case that she provided legal advice about. The other two, that's not a subpoena issue. This is a Fourth Amendment violation on arrest. The subpoenas come much later after they've been prosecuting the case. In your complaint, you say, in April 25th, she doctored the video. That's what we're talking about. That's not in relation to any subpoena. There's no subpoena in the case at that point. Is there? No, not at that point. Perhaps I was jumping ahead logically. Yes, you were. So we have her involved in the pre-trial deprivation of his Fourth Amendment rights. During that phase, she provides advice to police officers about how to respond to a subpoena, and she engages in what we are calling evidence tampering. So we believe that there is a sufficient connection, a sufficient nexus between the deprivation and her behavior. That leaves the two remaining subpoenas, and her advice with regard to the subpoenas to family court, which happened after her conviction in the first – rather, after his conviction in the first trial, during which time… Yes, I'm confused. April 26th, he's arrested, charged with gross sexual assault. When does he – when is his liberty deprived? When does he go on house arrest, et cetera? Well, he is arrested and taken into custody that night. He spends one day in jail. He then goes before a judge for a bail hearing, at which point restrictive bail conditions are imposed. So he is not released after the initial arrest. He's in jail, goes before a judge in a bail hearing. It's at that bail hearing, which I assume is right around April 26th or April 27th, his liberty is then severely restricted. Is that the argument? The bail hearing was the next day. He spent the night in jail. So that's the most severe restriction on a person's liberty there, the state can affect. Okay, so that's a discrete, he spent the night in jail. He spent the night in jail. You have told me that you don't yet know whether she had anything to do with the arrest. That's something you hope to find out in discovery. Then they go before a judge, and the judge imposes the bail conditions. What is the deprivation of liberty from a judge having imposed the bail conditions? Is it a theory that it's a, with the arrest she started the train down the track and nothing else matters? Yes, but in addition she actively advocated for bail conditions that restricted his liberty. Knowing that there's exculpatory evidence in the videotape. Exactly. You should have seen the videotape if you end up being able to prove that. Correct. So those restrictive conditions were a curfew, and that he had to submit to random searches without reasonable suspicion at the request of law enforcement officers, and he was banned for a period of time five days from his own home. But now post-arrest, a post-arrest argument for bail conditions, in your view, is a prosecutorial function or is not? That falls within her, that is a prosecutorial function. So that thing is the absolute immunity. So the part that's not the absolute immunity is the activity prior to that? That's correct, that's correct. Of course, and again now. Which is assisting the making of a case along with the investigators that she knows to be false. Correct. And then if we move, just so that we're, I don't want to do this and confuse the court again, so if we move we're all on the same page now, and talk about the remaining two subpoenas. These were subpoenas to produce documents in connection with a civil divorce custody proceeding. One could, though, reasonably look at this the way your opponent has said, which is she considered the civil divorce subpoenas to be an end run around the requirements in the criminal case. So he's using the divorce proceedings, if you will, to get discovery in the criminal case, and she's not interested in letting him do that. That's a reasonable way of looking at it. If that's so, isn't she covered by immunity? No, because in the Cuervas case, this court makes clear that subjective intent is not important. On top of that, the focus has to be. I've just given you an objectively reasonable reading of those records. The focus has to be on the function she was performing. And why is it so clear she's not acting as a prosecutor when she gives that advice? If she were acting as a prosecutor in the context of a criminal matter, of course there's no prosecutorial function, there is no Brady in family court, then what she could have done, perhaps should have done, is one of two things. File a motion in limine, or, and this is sort of a quirky part about Maine law, a notice of appeal does not diverse jurisdiction from the trial court during the pendency of the appeal. So she could have gone back into criminal court and sought some sort of protective order. She did neither of those things. So do you really want us to make law that if you don't follow particular procedures, you've lost your prosecutorial immunity? No, we ask this court to follow Burns, which holds that the analysis is on the function the prosecutor is performing, and there was absolutely no function for her to perform in family court. If she truly did have a concern about Brady, she had a way to address that within her function as a prosecutor. If you just think about it, who has the burden here? So the burden on the complaint is for you to identify some action, and we've talked about the cause of the case, I won't go back to it, but that's also plausibly not a prosecutorial function. And you say advice about a civil proceeding is plausibly not a prosecutorial function, it's got to depend somewhat on what she said, what the context were, but you know her advice was in this context. Burden then shifts back to one seeking absolute immunity to make some argument as to why, per se, that function just has to be prosecutorial. And I take it you're saying on the record we've got here there's no basis for saying that. So we prove our discovery that the way this came up and the way she was involved in advising on that makes it clear enough that it was a prosecutorial function. At that point, they can come back up to seek absolute immunity, but they just haven't got enough now. I think that's a fair way to think about this question. If the court has no further questions, thank you. Then what are we really being asked to decide? It keeps sounding like an abstract question has been pulled from us, and brought up to us, but you keep saying, like a motion to dismiss, we're at least entitled to discovery, and then we can sort all of this out. It's a bit of a problem as to how we ought to best approach these questions. In any event, I'm just making a comment. I'm not requesting further argument. Thank you. It's been very helpful to us to have both of these statements, and the court is going to adjourn.